502

HERBERT C. KIRK et al. v. BIG APPLE SUPER-
MARKET OF CLEVELAND.—304 S. W. (2d) 511.

Eastern Section.   March 26, 1957.

Petition for Certiorari denied by Supreme Court July 29, 1957.

504

King & Fuston, Chattanooga, for appellants.

Noone & Noone, Chattanooga, for appellee.

McAMIS, P. J. ■ Herbert C. Kirk and Big Apple Supermarket of Tennessee, a Tennessee corporation with situs in Hamilton County, filed the bill herein to enjoin the defendant Big Apple Supermarket of Cleveland from using the trade-name and trade-mark, "Big Apple", in Cleveland, Bradley County, Tennessee. The Chancellor found that the field of operation being 30 miles apart and in different cities did not overlap and that "little or no confusion is created in the public mind." Accordingly, the bill was dismissed and from that action complainants prosecute this appeal. For the sake of clarity, it is well to state at the outset that complainants' right to an injunction is dependent, as to the trade-name, "Big Apple", on common law principles but, as to the trade-mark, the case is governed by statute, T. C. A. sec. 69-501 et seq.

Complainant Kirk is an officer and stockholder in the Big Apple Supermarket of Tennessee. His operations

individually and those of the corporation in the retail field have been exclusively in Chattanooga and the immediately adjacent portion of Hamilton County. A very minor part of these operations has been sales at wholesale made or attempted to be made outside this area. Kirk began operations under the name ''Big Apple Fruit Store'' in 1933. In 1945, he developed the ''Kirk Supermarkets'' but continued to label certain items of groceries with the name ''Big Apple.''

On January 18, 1950, he registered this trade-mark with the Secretary of State of Tennessee as provided by the statute and, two days later, formed the complainant corporation using ''Big Apple'' as a part of the corporate name. Between January, 1950, and the date of the filing of the bill, August 2, 1954, Kirk, along with his son, became interested in Tennessee Food Fair, a corporation, but complainant Kirk, at the same time, continued the business of ''Big Apple'' on Mocassin Bend Road just outside the City of Chattanooga. Without his written permission but with his knowledge, approval and consent Tennessee Food Fair during this period, with the possible exception of brief periods, advertised as a Big Apple associate and featured on its shelves groceries bearing that label. The Chancellor found, we think properly, that, under these circumstances, there had been no abandonment of the trade-mark and trade-name.

The statute, T. C. A. sec. 69-505, provides that an assignment of a trade-mark can only be made in writing and unless recorded with the Secretary of State shall be ineffective as to subsequent purchasers. Defendant makes no claim to the rights of a purchaser and both Kirk and the corporation are parties complainant. It

is immaterial to defendant which has the legal title or whether the trade-mark has been legally assigned to the corporation. We, therefore, find without merit defendant's insistence that neither complainant is entitled to prosecute this action.

The defendant Big Apple Supermarket of Cleveland was chartered in Tennessee January 29, 1954. Its principal officers and stockholders are Isadore Alterman and Simon Moltack, both residents of Atlanta, Georgia. They began using the name "Big Apple" in the Atlanta area about 1939 and now operate in Georgia and Alabama more than 20 supermarkets under that name. Prior to 1954, they had been labeling certain items of groceries with that name.

On November 13, 1950, some ten months after complainant Kirk was granted the use of the name by the Secretary of State, they were granted a similar certificate. Their application was at first denied because of the similarity of the name to that previously granted but, apparently on the insistence of Attorney John F. Brezina of Chicago, it was finally granted. We think the record fairly shows that Brezina was acting as attorney for Alterman and Moltack. If not, defendant could easily have established the fact from proof peculiarly within its ability to produce. But this is largely immaterial because Mr. Moltack admitted in his testimony that he learned in 1953 that Kirk claimed to control the use of the name. This was sufficient to put him and his associate upon inquiry.

Alterman and Moltack and the corporations of their creation made no use of the trade-mark in Tennessee for more than three years after their application was granted.

During 1953, they negotiated with complainants for the purchase of their business in Chattanooga but these negotiations failed. In January, 1954, they purchased the Broad Street Grocery in Cleveland from complainants' witness, James Cox, and, to operate it, formed the defendant corporation, precipitating the filing of the bill in this case.

Mr. Cox testified that complainant Kirk had previously tried to buy the Broad Street Grocery but that they could not agree on the price and that he told Moltack that Kirk claimed the "franchise" on the name "Big Apple."

We consider first complainants' right to an injunction prohibiting the further use of the trade-mark "Big Apple" on the groceries displayed and sold by defendant in Cleveland. The question whether the rights of the owner of a legally registered trade-mark are state-wide or are deemed exclusive only within the field of competitive operations is of first impression in Tennessee. The courts elsewhere are not in agreement, but we think the conflict is more apparent than real and that to some extent it grows out of a failure to differentiate between trade-marks of statutory creation and those of common law origin. There is also some confusion in the use of the terms trade-mark and trade-name.

The trade-mark here under consideration clearly falls within the definition contained in the statute. T. C. A. sec. 69-501. The next Section outlines the procedure and provides that the application must be under oath and must state that no other person has the right to use the name or one of such "near resemblance thereto as may be calculated to deceive." It is expressly provided: "Said secretary of state shall not record for any

person, association or union any trade-mark theretofore filed by or on behalf of any other person, association or union.''

Nothing contained in the statute either expressly or by implication purports to limit territorially the use of the trade-mark as the Legislature could easily have done by limiting the rights of the holder of the certificate to the county of his residence or place of business or by providing that it would be ineffective in a field where the holder had never operated or which had been pre-empted by someone else.

In its civil application the statute is to be construed according to general rules of statutory construction and should be fairly and liberally construed to accomplish its purpose. 87 C. J. S. Trade-Marks, etc. sec. 129, p. 418. We think one purpose was to obviate confusion and conflict of the nature here under consideration and that arbitrarily to limit the rights of the holder to the territory of his present operations would leave the law much as it was at common law and largely defeat the purpose of the Legislature.

■ The express prohibition of our statute against issuing certificates with conflicting names or names which are calculated to deceive and the absence of any territorial limitation indicate that it was not intended to limit the rights of the registrant to an established field of operations. Socony-Vacuum Oil Co. v. Oil City Refiners, 6 Cir., 136 F. (2d) 470. Since the case turns in part on these special statutory provisions, it would not be profitable to attempt a discussion of numerous cases from other jurisdictions based on different statutory provisions. They are collected in the footnotes at 148 A. L. R. 121.

Based on these cases it is said: "State statutes providing for the registration of trade-marks or trade-names have * * * in some instances been held to have been enacted for the purpose of conferring state-wide right to the exclusive use of such particular name or device as comes within its terms, and under such statutes the registrant has been held protected in a locality within the state to which he has not yet expanded his trade by actual commercial transactions." 52 Am. Jur. 523.

■ ■ We hold that complainants' right to use their trade-mark is state-wide and that the sale of products so labeled in Cleveland constitutes an infringement of their trade-mark. Kay Jewelry Co. of Chattanooga v. Morris, 26 Tenn. App. 235, 171 S. W. (2d) 410, and other cases cited and followed by the learned Chancellor involving common law trade-names are not considered in point.

On the question of complainants' right to the exclusive use of the trade-name "Big Apple" in Cleveland, as we have seen, the Chancellor found that there was no overlapping of the two trading areas and little confusion resulting from the concurrent use of the name in Chattanooga and Cleveland. The only confusion shown by complainants relates to a few instances when they were shown advertisements of the Cleveland store and asked if the two stores were being operated by the same company. There was no loss of business resulting from this. On the contrary, it seems to us complainants were benefited. The conflicting claims to the use of the name, as we have indicated, are governed by common law principles. The right to an injunction is governed by equitable principles.

■ Whether or not defendant was guilty of fraud or unfair competition in registering the trade-mark knowing of its prior appropriation by complainant Kirk, in view of the undisputed fact that Alterman and Moltack had been using extensively the name ''Big Apple'' since 1939, we cannot say the evidence preponderates against the Chancellor's finding that complainants failed to establish a fraudulent use of the name in Cleveland.

We hold that complainant Kirk is entitled to an injunction restraining defendant from using the trade-mark but that there was no error in declining to enjoin the operation of defendant's store in Cleveland. As so modified the decree will be affirmed and the cause remanded. Costs of both courts will be equally divided.

Hale and Howard, JJ., concur.